## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  11-81368-CIV-DIMITROULEAS

REALTOR® ASSOCIATION OF GREATER
FORT LAUDERDALE, INC.,

      Plaintiff,

vs.

MIAMI ASSOCIATION OF REALTORS®, INC.,

      Defendant.

_____/

### <u>DEFENDANT'S ANSWER AND COUNTERCLAIM</u>

Defendant Miami Association of Realtors® ("MAR") hereby files its Answer in response to the Complaint served by Plaintiff Realtor® Association of Greater Fort Lauderdale, Inc's ("RAGFL") Complaint as follows:

### <u>ANSWER</u>

1.      MAR admits the allegations of paragraph one.

2.      MAR denies the allegations of paragraph two.

3.      MAR admits the allegations of paragraph three.

4.      MAR admits that the allegations in paragraph four contain a partial description of its business, although it is an incomplete statement.

5.      MAR admits the allegations of paragraph five.

6.      MAR admits the allegations of paragraph six.

7.      MAR admits the allegations of paragraph seven to the extent it alleges that both organizations have members who are licensed in multiple states where they may conduct business (not "throughout the United States" as alleged).

8.      MAR admits the allegations of paragraph eight.

9.      MAR denies the allegations of paragraph nine.

10.     MAR denies the allegations of paragraph ten.

11.     MAR denies the allegations of paragraph eleven.

12.     MAR denies the allegations of paragraph twelve.

13.     MAR denies the allegations of paragraph thirteen.

14.     MAR denies the allegations of paragraph fourteen.

15.     MAR admits the allegations of paragraph fifteen.

16.     MAR admits the allegations of paragraph sixteen.

17.     MAR admits the allegations of paragraph seventeen.

18.     MAR admits it is the largest local realtor® association in the nation but is without knowledge of what the "touts" means as alleged in paragraph eighteen.

19.     MAR admits that it was formed as a result of the merger of The Realtor® Association of Greater Miami and the Beaches and the Realtor® Association of Miami-Dade County, and that the organization currently comprises more than 25,000 members.  MAR merged with Northwest Dade Association of REALTORS®, but denies the remaining portions of paragraph nineteen.

20.     The allegations of paragraph twenty contain a legal conclusion for which no response is required; MAR is without knowledge or information to admit such legal conclusion.

21.     The allegations of paragraph twenty-one contain a legal conclusion for which no response is required; MAR is without knowledge or information to admit such legal conclusion. MAR admits it has offices in this District and is a corporate citizen of Florida.

22.     The allegations of paragraph twenty-two contain a legal conclusion for which no response is required; MAR is without knowledge of information to admit such legal conclusion.

23.     MAR admits that venue is proper in this District but denies it caused any harm to plaintiff as alleged in paragraph twenty-three.

24.     MAR cannot respond to the term "at all times material hereto" in paragraph twenty-four, as it is not defined.  MAR does admit that it has offices in Plantation, Florida, in Broward County and offices in Miami-Dade County.

25.     MAR denies the allegations of paragraph twenty-five.

26.     MAR admits the allegations of paragraph twenty-six as to its own members. MAR is without knowledge or information to form a belief as to where RAGFL members conduct business outside of Florida.

27.     MAR denies the characterizations of the allegations contained in paragraph twenty-seven.  MAR admits it promotes itself in Broward County by communicating its range of services and the value it delivers to its members.  MAR admits it has a Broward Council, but denies the remaining allegations of paragraph twenty-seven of the Complaint.

28.     MAR denies the allegations of paragraph twenty-eight.

29.     MAR admits the allegations of paragraph twenty-nine.

30.     MAR admits the allegations of paragraph thirty.

31.     MAR admits the allegations of paragraph thirty-one.

32.      MAR admits the allegations of paragraph thirty-two.

33.     MAR admits that it offers competing products and services in Miami-Dade and Broward counties but denies that it markets such products and services to Palm Beach County.

34.     MAR admits the allegations of paragraph thirty-four.

35.     MAR admits the allegations in the first sentence of paragraph thirty-five.  MAR denies the allegations in the second sentence of paragraph thirty-five.

36.     MAR admits that it offers a mix of services and benefits similar to RAGFL's but denies the services of RAGFL are of the same scope and quality. MAR denies the remaining portions of paragraph thirty-six.

37.     MAR admits that the description of Multiple Listing Services ("MLS") is generally accurate as alleged in paragraph thirty-seven.  However, in December 2010, RAGFL changed the computer platform for the MLS, making access to the RAGFL MLS database more difficult and reducing the quality of MLS services for MAR members.

38.     MAR admits that the description of MLS as alleged in paragraph thirty-eight is generally accurate except for the statement that as "nearly 100% of the homes for sale in a given local market appear in the local MLS data compilation."  However, prior to February 2011, real estate sales by non-RAGFL members in Broward County, Florida were not being reported. RAGFL was aware of the incomplete data, which caused the reported Broward statistics to be inaccurate and which distorted the Broward real estate market.  RAGFL openly promoted this practice by advertising that real estate professionals would be "invisible" if they did not belong to RAGFL. This practice impacted the market data by excluding approximately 30-40% of reported sales from the MLS data compilation for Broward County.

39.     MAR admits the allegations of paragraph thirty-nine.

40.     MAR admits the allegations of paragraph forty.

41.     MAR denies the allegations of paragraph forty-one.

42.     MAR denies the allegations of paragraph forty-two.

43.     MAR denies that REALTORS® are effectively barred from the business without lockboxes.   MAR also denies that a computer key or mechanical key is "held by all REALTORS® in a given MLS region."   MAR otherwise admits the allegations of paragraph forty-three.

44.     MAR denies that lockbox technology is "critical" for REALTORS®.   MAR admits it offers SUPRA to its members and states it offers better pricing and more locations to its members than RAGFL offers its members.

45.     MAR admits that membership in a local realtor® association is important for a real estate licensee.  MAR admits the remaining allegations in paragraph forty-five.

46.     MAR admits the allegations of paragraph forty-six but denies that price of membership is "critical."

47.     MAR admits the allegations of paragraph forty-seven.

48.     MAR denies the allegations of paragraph forty-eight.

49.     MAR denies the allegations of paragraph forty-nine.

50.     MAR denies the allegations of paragraph fifty.

51.     MAR denies the allegations of paragraph fifty-one.

52.     MAR admits sending emails in January 2011, referenced in paragraph fifty-two. MAR lacks knowledge as to what servers were involved in the transmission of the emails, who received the emails, or where the recipients were located.   MAR denies that the quantity of emails totaled "in the tens of thousands."

53.    MAR admits sending emails in July 2011, but lacks knowledge as to who received the emails.  MAR admits the quoted statements were part of the emails but denies the characterization of those statements in paragraph fifty-three.

54.    MAR denies the allegations of paragraph fifty-four.

55.    MAR denies the allegations of paragraph fifty-five.

56.    MAR denies the allegations of paragraph fifty-six.

57.    MAR admits the allegations in paragraph fifty-seven but denies that MAR established accounts in August, 2011.  In fact, the accounts had been established long before August, 2011.

58.    MAR denies the allegations of paragraph fifty-eight as characterized.

59.    MAR denies the allegations of paragraph fifty-nine as characterized.

60.    MAR admits it sent post cards, but denies the remaining allegations of paragraph sixty.

61.    MAR admits it sent post cards on August 24, 2011, and admits that the post cards included the quoted language in paragraph sixty-one.  MAR is without knowledge as to who received the post cards.  Moreover, MAR denies that GetSuprafree.com is a "website."  It is a link to a location on MAR's website.

62.    MAR admits to the allegations of paragraph sixty-two.

63.    MAR denies the allegations of paragraph sixty-three.

64.    MAR denies the allegations of paragraph sixty-four.

65.    MAR denies the allegations of paragraph sixty-five, including all subparts.

66.    MAR admits it sent post cards on September 15, 2011 and admits that the post cards included the quoted language in paragraph sixty-six (a)-(d).  MAR is without knowledge as

to who received the post cards.  Moreover, MAR denies that GetSuprafree.com is a "website."  It is a link to a location on MAR's website.

67.     MAR denies the allegations of paragraph sixty-seven.

68.     MAR denies the allegations of paragraph sixty-eight.

69.     MAR denies the allegations of paragraph sixty-nine, including all subparts.

70.     MAR admits sending postcards in October 2011.

71.     MAR denies the allegations of paragraph seventy-one.

72.     MAR denies the allegations of paragraph seventy-two.

73.     MAR denies the allegations of paragraph seventy-three, including all subparts.

74.     MAR admits it sent postcards but denies the remaining allegations in paragraph seventy-four.

75.     MAR denies the characterizations contained in paragraph seventy-five.

76.     MAR denies the allegations of paragraph seventy-six.

77.     MAR denies the allegations of paragraph seventy-seven, including all subparts.

78.     MAR admits it advertised in the Sun-Sentinel on October 9, 2011 but otherwise denies the statements in paragraph seventy-eight.

79.     MAR denies the allegations of paragraph seventy-nine.

80.     MAR denies the allegations of paragraph eighty, including all subparts.

81.     MAR denies the allegations of paragraph eighty-one.

82.     MAR denies that Facebook Wall posts constitute "advertising statements." MAR otherwise admits the allegations of paragraph eighty-two.

83.     MAR admits the allegations of paragraph eighty-three.

84.     MAR denies the allegations of paragraph eighty-four.

85.     MAR denies the allegations of paragraph eighty-five.

86.     MAR denies that Facebook Wall posts constitute "advertising statements."  MAR otherwise admits to the allegations of paragraph eighty-six.

87.     MAR admits the allegations of paragraph eighty-seven.

88.     MAR denies the allegations of paragraph eighty-eight.

89.     MAR denies the allegations of paragraph eighty-nine.

90.     MAR denies the allegations of paragraph ninety.

91.     MAR denies the allegations of paragraph ninety-one.

92.     MAR denies the allegations of paragraph ninety-two, as the allegation incorrectly describes how an item appeared on the Facebook Wall of Ms. Kinney.

93.     MAR denies the allegations of paragraph ninety-three.

94.     MAR denies the allegations of paragraph ninety-four.

95.     MAR admits certain staff attended the NAR Annual Convention, but denies the remaining portion of the allegations in paragraph ninety-five.

96.     MAR denies the allegations of paragraph ninety-six.

97.     MAR denies the allegations of paragraph ninety-seven.

98.     MAR denies the allegations of paragraph ninety-eight.

99.     MAR denies the allegations of paragraph ninety-nine.

100.    MAR denies the allegations of paragraph one hundred.

101.    MAR denies the allegations of paragraph one hundred one.

102.    MAR denies the allegations of paragraph one hundred two.

103.    MAR realleges all prior responses to allegations in paragraphs 1-102 of the Complaint as though fully set forth herein.

104.   MAR admits the allegations of paragraph one hundred four but denies that it competes for members in Palm Beach County.

105.   The allegations of paragraph one hundred five contain a legal conclusion for which no response is required, however, to the extent a response is required, MAR denies the allegations of paragraph one hundred five.

106.   MAR denies the allegations of paragraph one hundred six.

107.   MAR denies the allegations of paragraph one hundred seven.

108.   MAR denies the allegations of paragraph one hundred eight.

109.   MAR denies the allegations of paragraph one hundred nine.

110.   MAR denies the allegations of paragraph one hundred ten.

111.   MAR denies the allegations of paragraph one hundred eleven.

112.   MAR denies the allegations of paragraph one hundred twelve.

113.   MAR denies the allegations of paragraph one hundred thirteen.

114.   MAR denies the allegations of paragraph one hundred fourteen.

115.   MAR denies the allegations of paragraph one hundred fifteen.

116.   MAR denies the allegations of paragraph one hundred sixteen.  Plaintiff is not entitled to any relief in this case.

117.   MAR realleges all prior responses to allegations in paragraphs one hundred fifteen of the Complaint as though fully set forth herein.

118.   The allegations of paragraph one hundred eighteen contain a legal conclusion for which no response is required, however, to the extent a response is required, MAR denies the allegations of paragraph one hundred eighteen.

9

119.    The allegations of paragraph one hundred nineteen contain a legal conclusion for which no response is required, however, to the extent a response is required, MAR denies the allegations of paragraph one hundred nineteen.

120.    The allegations of paragraph one hundred twenty contain a legal conclusion for which no response is required, however, to the extent a response is required, MAR denies the allegations of paragraph one hundred twenty.

121.    MAR denies the allegations of paragraph one hundred twenty-one.

122.    MAR denies the allegations of paragraph one hundred twenty- two.

123.    MAR denies the allegations of paragraph one hundred twenty- three.

124.    MAR denies the allegations of paragraph one hundred twenty- four.

125.    MAR denies the allegations of paragraph one hundred twenty-five.

126.    MAR denies the allegations of paragraph one hundred twenty-six.

127.    MAR denies the allegations of paragraph one hundred twenty-seven.

128.    MAR denies the allegations of paragraph one hundred twenty-eight.  Plaintiff is not entitled to any relief.

129.    Any allegation not specifically admitted, or otherwise responded to, is denied.

## FURTHER ANSWER AND AFFIRMATIVE DEFENSES

By way of further Answer and as affirmative defenses, MAR states as follows:

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

130.    The Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

(Truth)

131.     All of Plaintiff's claims are barred because MAR's advertisements are true and non-misleading in all respects.

### THIRD AFFIRMATIVE DEFENSE

(Statements of Opinion or Puffery)

132.     Plaintiff's claims are barred to the extent that MAR's advertisements consist of non-actionable statements of opinion or puffery.

### FOURTH AFFIRMATIVE DEFENSE

(Consumer Sophistication / No Actual or Likely Deception)

133.     Plaintiff's claims against MAR are barred because the alleged ads were directed toward a class of consumers who were knowledgeable about the products and services offered and therefore were not deceived, nor likely to be confused or misled, by any statements therein.

### FIFTH AFFIRMATIVE DEFENSE

(No Causation)

134.     Plaintiff's claims against MAR are barred because Plaintiff's damages, if any, were not caused by MAR.

135.     State Association records reflect a steady decline in RAGFL's membership, from 13,200 in December 2006—four years before MAR was formed—to 7,700 in December 2011, consistent with trends in the real estate industry.

## SIXTH AFFIRMATIVE DEFENSE

### (Lack of Injury)

136.    Plaintiff's claims against MAR are barred because RAGFL has suffered no harm to its reputation, its business, goodwill or otherwise, as a result of the alleged statements set forth in the Complaint or as a result of any other conduct set forth in the Complaint.

## SEVENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

137.    Plaintiff has failed to mitigate its damages, if any.

## EIGHTH AFFIRMATIVE DEFENSE

### (Waiver, Acquiescence, and Estoppel)

138.    Each of the purported claims set forth in the Complaint is barred by the doctrines of waiver, acquiescence, and estoppel.

## NINTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

139.    Plaintiff's claims are barred by the doctrine of unclean hands.

## TENTH AFFIRMATIVE DEFENSE

### (Lack of Irreparable Harm)

140.    Plaintiff's claims for injunctive relief are barred because Plaintiff cannot show that it will suffer any irreparable harm from MAR's actions.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Adequacy of Remedy at Law)

141.    The alleged injury or damage suffered by Plaintiff, if any, would be adequately compensated by damages. Accordingly, Plaintiff has a complete and adequate remedy at law and is not entitled to seek equitable relief.

## TWELFTH AFFIRMATIVE DEFENSE

### (Improper Request for Injunctive Relief)

142.    Plaintiff's request for injunctive relief is barred because it is overbroad in scope and impermissibly vague.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (First Amendment)

143.    Plaintiff's claims for injunctive relief are barred because Plaintiff seeks to prohibit speech protected by the First Amendment of the United States Constitution in violation of MAR's constitutional rights.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Lack of Standing)

144.    To the extent Plaintiff's claim for injunctive relief, or any other claim, is based on the Florida Free Gift Advertising Law, § 817.415 Fla. Stat., Plaintiff lacks standing to sue because that statute does not provide a private cause of action. Pursuant to Florida Statute § 817.415 (7) only the Commissioner of Agriculture or the Attorney General may seek an injunction to prohibit practices in violation of the law.

## PRAYER FOR RELIEF

WHEREFORE, MAR prays for relief as follows:

A.  That the Court enter judgment in favor of MAR and against Plaintiff on Plaintiff's Complaint;

B.  That the Court dismiss Plaintiff's Complaint with prejudice;

C.  That the Court award MAR its costs and attorneys' fees; and

D.  That the Court award MAR such other and further relief as is just and proper.

## COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendant counterclaims against Plaintiff RAGFL as follows:

## STATEMENT OF FACTS

145.    The counterclaims include actions for defamation, injurious falsehood, tortious interference, and unfair competition, based on damages arising from verbal statements made to third parties by RAGFL's authorized representatives that were false, injurious, and defamatory. Moreover, the statements were likely to confuse MAR's members and potential members. RAGFL's actions resulted in harm to MAR in the form of lost memberships and expenditures necessary to combat the misinformation.

Defamatory Statements by RAGFL

146.    Stephen B. McWilliam is currently President of RAGFL.

147.    On behalf of RAGFL, McWilliam and other RAGFL leaders attended the meeting of Florida Realtors Committee held in Orlando in January 2012 ("the Meeting").

14

148.    McWilliam's and other RAGFL leaders' attendance at the meeting was within the scope of their positions as officers of RAGFL.

149.    While at the Meeting, McWilliam and other RAGFL leaders stated to numerous third parties that, among other things, several of MAR's officers and staff members were the subject of a criminal investigation and that several of its employees would soon be indicted (that day) on criminal charges.

150.    The statement necessarily implied that MAR officers or its employees had engaged or were suspected of having engaged in felonious criminal activity.

151.    McWilliam and others repeated the statements to various third-party individuals also in attendance.

152.    McWilliam's statements were offered as fact and not opinion.

153.    In truth, no indictments are or were pending against MAR or its representatives. Therefore, the statement regarding pending indictments is and was wholly untrue.

154.    McWilliam and others representing RAGFL made the statement as to pending indictments without with knowledge of its falsity or without regard to the statement's truth or falsity.

155.    On or about February 28, 2011, RAGFL published a video on YouTube wherein McWilliam stated false information about MAR's products, services, and statistics, among other things.

156.    On information and belief, the YouTube video was watched by existing or potential MAR members, as a link to the video was sent to RAGFL members and a list of MAR members culled from the MLS.

15

<u>RAGFL's Fraudulent Efforts to Retain Transferring Members, Including Impersonation</u>

<u>of a State Association Employee</u>

157.    On information and belief, RAGFL or its agents engaged in a campaign of fraudulent misrepresentation—the full scope of which will be revealed at trial—to retain members who voluntarily transferred to MAR, constituting unfair competition.

158.    On or about September 17, 2011, a comment was posted on the MAR Broward Council's Facebook page by someone who had created a false Facebook profile impersonating the actress and singer Mandy Moore.  The post appeared to have been posted by an agent of RAGFL, as it made the same meritless and defamatory allegations contained in Plaintiff's complaint.  The comment contained false information about MAR and Supra, and disputed the number of members in Broward.  MAR contacted Facebook, which determined that the profile was fraudulent and then removed it as a violation of Facebook's terms of service.

159.    On or about September 19, 2011, a MAR member who had transferred from RAGFL earlier that month, received a call from "Bill", which CallerID showed as originating from (407) 438-1400, Florida Realtors' main number.  "Bill" told the member that she would no longer be able to view RAGFL listings, which was false.  The member contacted Florida Realtors and determined that the call did not originate from that office, there was no "Bill" at Florida Realtors, nor would Florida Realtors ever conduct such calls.

160.    On or about the same day, McWilliam sent an email to transferring member Mike Maloney of Keller William Properties communicating false and misleading information to Maloney, including the assertion that RAGFL members had higher transactions on average.

161.    On or about September 20, 2011, McWilliam and Thomas O'Bryant (RAGFL's Chief Operating Officer) sent emails to other transferring members making similar claims to those made by McWilliam to Maloney at Keller William Properties.

162.    On or about September 23, 2011, McWilliam sent an email to a transferring member, trying to get her to return to RAGFL by providing false information about loss of MLS data.

163.    On or about September 26, 2011, someone named "Dave" claiming to work at Florida Realtors and originating from (407) 438-1400 called a transferring member, ostensibly to inform her that he noticed she was transferring and wanted to advise her that she would no longer be able to see or search RAGFL listings.  "Dave" refused to give his last name.  The member called her manager, who then called Florida Realtors to relay the story.  The head of IT at Florida Realtors told the manager that there was no "Dave" at Florida Realtors and that, in any case, they would never make a call like that.

164.    On information and belief, RAGFL initiated numerous similar calls and emails to transferring members, wherein RAGFL's agents would misrepresent themselves and exaggerate the consequences of transferring, all in an effort to retain members.

165.    Even though State Association figures show that RAGFL currently has fewer than 7,700 members, on the RAGFL website, the organization claims inaccurately to represent more than 8,200 members (and more than 12,000 members, elsewhere).

166.    RAGFL knew their sales statistics for the market were wrong but did nothing about it.  On or about January 5, 2011, McWilliam sent an email to a realtor[®] that stated:

> "Only RAGFL numbers are used to determine the Fort Lauderdale MSA (Metropolitan Service Area) which is what the Sun-Sentinel reports as Broward

County . . . .   [This] is tremendously damaging to our (RAGFL) members and the Broward community as the MLS data is the barometer used nationwide to measure the health of our real estate market.   Simply put, if REALTORS® want their Broward sales considered by the media and to help grow Broward sales they need to be RAGFL listings."

167.   McWilliam also told the realtor® that RAGFL brokers need to be MAR members to display MAR Broward listings and that, as a result, Broward-based MAR members are not providing the same degree of exposure to their Broward listings as are RAGFL members' Broward listings.

168.   This statement was false because, in fact, members do not have to join MAR to get a Real Estate Transaction Standard (RETS) system feed, they only need to be in MAR's MLS reciprocal system, complete the forms and pay the fees.

169.   In addition, McWilliam also provided false information regarding the IMAPP real estate information system as compared to the MLXchange system.

170.   At all times, McWilliam, O'Bryant, and other RAGFL officers or employees involved in these false communications were acting within the scope, and in furtherance, of their RAGFL duties.

171.   RAGFL's efforts directly impeded MAR's ability to establish lawful and voluntary business relationships with members and to fulfill its contractual obligations under the terms of those relationships.

RAGFL Misstatements about MAR

172.   In December 2010, RAGFL switched servers for its MLS.

173.     Before the switch, MAR and RAGFL used the same vendor and server for their MLS, which made both RAGFL and MAR members' use of the MLS efficient and effective.

174.     Once RAGFL made the server change in December 2010, the process for the members to use the MLS of the other association became cumbersome, inefficient, difficult and unreliable.

175.     In part, as a result of the change, RAGFL members started leaving RAGFL to join MAR.

176.     During the transfer process, RAGFL falsely advised the transferring members that difficulties in the transfer process were caused by MAR.

177.     In reality, RAGFL systematically inhibited the transferring members' efforts to move to MAR.

178.     RAGFL's efforts to impede its members' transfer and then blame the difficulties on MAR had the effect of creating a negative, false impression in the business market about MAR.

179.     On or about May 17-19, 2011, McWilliam sent an email containing false statements about MAR to prominent brokers at two of the largest real estate companies in the market.  Among other things, the email stated that:

          a.     "Premerger statistics (sent to Florida Realtors each month) did not include Northwest Dade Association of Realtors."  This statement was not true, as Sandy Landry at MarketLinx for years would send statistics for all three boards in Miami-Dade County to Florida Realtors;

       b.     MAR's statistics should be reported using Status Change Date, something that RAGFL has never done and which is contrary to what Florida Realtors requests from local associations, including RAGFL;

       c.     MAR's conduct in a press release was "nothing short of reckless";

       d.     MAR continues to release incorrect Broward Data, which is not true, because MAR fixed the data reporting process; and

       e.     MAR's statistics should be pulled on the 20th of the month (as close as possible to press time) and matched to recorded deed data for unreported sales, something that is virtually impossible to do, and different from what RAGFL does and continues to do.

180.    The statements in McWilliam's email were false and defamatory, and damaged the reputation of MAR among industry leaders.

## FIRST COUNTERCLAIM

(Defamation)

181.    MAR incorporates by reference the allegations set forth in paragraphs 145 through 180, above.

182.    McWilliam and others representing RAGFL made statements about MAR and its officers that are false.

183.    McWilliam and others representing RAGFL communicated these falsehoods to third parties.

184.    McWilliam and others representing RAGFL knew such false statements would likely result in material and substantial defamation of Plaintiff and his business practices.

185.    McWilliam's and others' false statements impute to MAR conduct, characteristics and/or conditions incompatible with the proper exercise of MAR's lawful business, trade, and/or profession.

186.    By making the statements to third parties in the Real Estate industry, including RAGFL and MAR members, McWilliam and others representing RAGFL published defamatory statements to a wide range of persons in the public.

187.    McWilliam and others representing RAGFL made these false and malicious statements knowing they were false or with a reckless disregard for the truth, without reasonable grounds for McWilliam to believe they were true, and with intent to injure and defame MAR.

188.    McWilliam's and others' defamatory statements injured the reputation of MAR.

189.    As McWilliam was RAGFL's President-Elect or President at the time, and the forum was real-estate-related, McWilliam was an authorized agent of RAGFL acting within the scope of his duties, as were others who made similar comments.  Therefore, RAGFL is vicariously liable for McWilliam's and the others' defamatory statements.

## SECOND COUNTERCLAIM

### (Injurious Falsehood)

190.    MAR incorporates by reference the allegations set forth in paragraphs 145 through 189, above.

191.    The statements by McWilliam's and others that MAR's officers and staff would soon be indicted were false and untrue, and disparaged MAR's leadership.

192.    By telling the statement to various third parties at the meeting, McWilliam and others representing RAGFL published the disparaging statement to one or more people.

193.    McWilliam and others representing RAGFL negligently published the false and disparaging statement concerning MAR, causing at least one of MAR's members or potential members to regard MAR as untrustworthy, imputing deceit, dishonesty and reprehensible conduct to MAR.

194.    The statements by McWilliam and others that MAR's officers or staff would soon be indicted is false and untrue, and disparaged MAR.

195.    By making the false and disparaging statements, McWilliam and others representing RAGFL published the statement to a wide range of persons in the public.

196.    The publication of the false and disparaging statements by McWilliam and others representing RAGFL caused MAR to suffer special and general damages and injury to the reputation of MAR.

197.    McWilliam and others representing RAGFL published the false and disparaging statements with the knowledge that the statement was false, or with reckless disregard as to the falsity of the statements.

198.    As McWilliam was an officer of RAGFL at the time, and the forum was real-estate-related, McWilliam was an authorized agent of RAGFL acting within the scope of his duties, as were others who made similar comments.  Therefore, RAGFL is vicariously liable for McWilliam's tortious actions.

## THIRD COUNTERCLAIM

(Tortious Interference with Advantageous Business Relationship)

199.    MAR incorporates by reference the allegations set forth in paragraphs 145 through 198, above.

22

200.    MAR had existing business relationships with various individuals in the form of memberships, including existing memberships, renewals, and prospective memberships.

201.    McWilliam and others representing RAGFL were aware of those business relationships at the times they made false and defamatory statements about MAR, its officers and its leadership.

202.    By making false and defamatory statements about MAR to certain of MAR's members, McWilliam and others representing RAGFL intentionally and unjustifiably interfered with the relationships between MAR and its members (both existing and prospective).

203.    MAR was damaged in various ways by the aforementioned interference in the business relationship between MAR and its members, including but not limited to lost dues revenue.

204.    The untruthful statements to MAR's members and prospective members by McWilliam and others representing RAGFL did not constitute legitimate competition.

205.    As McWilliam was RAGFL's President-Elect or President at the time, McWilliam was an authorized agent of RAGFL acting within the scope of his duties, as were others who made the false statements.  Therefore, RAGFL is vicariously liable for McWilliam's defamatory statements.

## FOURTH COUNTERCLAIM

### (Unfair Competition)

206.    MAR incorporates by reference the allegations set forth in paragraphs 145 through 205, above.

207.    MAR and RAGFL compete for the same business.

208.   By making false statements about MAR on the numerous occasions documented above, RAGFL engaged in deceptive and fraudulent conduct.

209.   MAR's members and potential members were likely to be confused by the false and misleading statements made by RAGFL and its representatives.

210.   Among other harms, MAR lost existing members or potential members as a result of RAGFL's fraudulent or deceptive conduct.

211.   Therefore, RAGFL is liable to MAR for Unfair Competition under Florida Common Law.


WHEREFORE, the Defendant/Counterclaim-Plaintiff MAR demands judgment against Plaintiff/Counterclaim-Defendant RAGFL for damages and other relief this Court deems just and proper.

**<u>JURY REQUEST</u>**

Defendant / Counterclaim-Plaintiff hereby requests a trial by jury on all claims so triable.


*/s/ Steven W. Davis*
Steven W. Davis


Dated: January 27, 2012
       Miami, Florida

Respectfully submitted,

*/s/ Steven W. Davis*
Steven W. Davis
Florida Bar No. 347442
E-mail:  sdavis@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida  33131
Tel: 305-539-8400

Fax: 305-539-1307

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of January 2012, a true and correct copy of the foregoing was filed with the Clerk of Court using CM/ECF thereby serving all parties and counsel of record on the attached Service List by electronic notification generated by CM/ECF.

*/s/* Steven W. Davis
Steven W. Davis

**<u>SERVICE LIST</u>**

***Attorneys for Plaintiff / Counterclaim-Defendant:***

Steven R. Jaffe
Mark S. Fistos
Farmer Jaffe Weissing Edwards Fistos & Lehrman PL
425 N. Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Tel:  954-524-2820
Fax: 954-524-2822
Email: steve@pathtojustice.com

Stephen J. Simmons, Esq.
Murray & Simmons, LLP
1401 East Broward Blvd., Suite 200
Fort Lauderdale, FL  33301
Tel: 954-467-2000
Fax: 954-467-2306
Email: sjs@mslaw.net